### Michael O'Connell, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 14,569.

NEGLIGENCE—*duty of motorman at street crossing.* It is the duty of a motorman to have his car under control when approaching street crossings.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed July 9, 1909.

JOHN E. KEHOE and C. LEROY BROWN, for appellant; JOHN R. HARRINGTON, of counsel.

WHITMAN & HORNER, for appellee.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

The railway company is prosecuting this appeal to procure the reversal of a judgment for $5,000 recovered against it, by Michael O'Connell, in an action on the case for personal injuries.

O'Connell, a teamster, had finished his day's work, at about six o'clock in the evening of October 8, 1903, by unloading his last load at the Wabash Railway

freight depot on Twelfth street, here in Chicago. In driving home he drove his team to Taylor street and west on that street until, in crossing Clark street, his wagon was struck at about its center by a street car of the railway company. The car was an electric trolley car, southbound, running on the west one of two tracks operated by the company in Clark street. In the collision the king bolt on the wagon was broken and the horses passed on "pretty lively" with the front wheels. The remainder of the wagon was carried south by the car, a distance estimated at from twenty-five to fifty feet. At a distance of from fifty to seventy-five feet from where it struck the wagon the car stopped. O'Connell was thrown from the wagon to one side. In the collision the controller box on the front platform was broken and the motorman's handle thereupon was knocked off, thereby the motorman was prevented from reversing the electric power or doing anything toward stopping the car, except applying the brake.

There is great conflict in the evidence in respect to the details and precise circumstances of the occurrence. It is absolutely impossible to harmonize the various and differing versions. The company contends that there is an entire lack of evidence to prove the exercise of ordinary care by plaintiff. We do not agree with that contention. Plaintiff's wagon was run into at a public street crossing practically in the center of Chicago. There is evidence in the record tending to prove that the horses' heads were on the east rail of the east or northbound track when plaintiff began to whip his horses; that the team and wagon were then visible from the car and were seen by one of the passengers on the car; that that passenger stood beside the motorman, who had an equal opportunity of observing the plaintiff, and that the car was then about one hundred and fifty feet north of Taylor street. There is evidence tending to show that at the time plaintiff began whipping up his horses he looked toward the car. Counsel for appellant, in their brief,

characterize this effort to then hurry the team across the tracks as reckless. They say: "This reckless attempt was made after he had looked directly at the approaching car, which was within one hundred and fifty feet of him coming south at full speed." There is a question whether the car was then at full speed. The jury did not regard plaintiff's act as reckless; neither do we. The motorman testified that his car was pretty well loaded; that he first saw the horses as they were about to step over the east rail of the northbound track; that they were then about nine feet from the track his car was upon; that he was approaching this crossing at a rate of speed of about seven or eight miles per hour; that the full speed of that type of car was about twelve miles an hour; that the "horses traveled seventeen feet while the car traveled fifteen feet;" that "when I first saw those horses' heads I put the lever brake on;" that "at the time I first saw the horses' heads the power was off;" that "the rule requires us to pass crossings without the power on and that is what I was doing at this time;" that "I no more than saw the horses' heads when I applied the brake and in a couple of seconds it hit the wagon;" that at the time of the occurrence he had been a motorman about five weeks, running upon different lines as an extra man, and that he then understood the operation of electric cars as well as at the time of testifying. There is evidence that another team and wagon were immediately ahead of O'Connell, and it was argued that the whipping up of the horses could serve no purpose. Although the motorman testified that he was "looking south" as he approached Taylor street and that there was no team ahead of O'Connell, we believe the evidence fully justified the jury in believing that this team did precede O'Connell and in concluding that the motorman did not look south soon enough, or when he should have been looking south, since he failed to see the first team. Flanigan, who drove the team ahead, testified that the first thing he knew of the "happening" was when he heard a loud

crash and that when he drove into Clark street he looked north and saw the car about four hundred feet north, coming south. He said, also, that his team "must have been going at the rate of four or five miles an hour." There is also evidence tending to show that the motorman's attention, immediately before the collision, was diverted by the possibility of an accident to a boy who was stealing a ride on the east side of the platform of his car, from a car running north on the east track. There is, however, a square conflict in the evidence as to whether this incident, with reference to the boy, was not closed fully half a block north of the Taylor street crossing. Considering the several phases of possible facts presented by the evidence, any one of which the jury might properly adopt, and considering, further, the inferences and deductions the jury were justifiable in drawing from the facts and circumstances they might adopt, we cannot say there was an absence of sufficient evidence that plaintiff exercised ordinary care for his own safety at the time in question. Neither can we hold that there was not negligence in the motorman's operation of the car or that he did not fail to exercise ordinary and reasonable care in approaching the crossing. It was his duty in approaching the street crossing here in question to have his car under control. Upon the evidence in this record there is ample evidence to justify the jury in arriving at the conclusion that the motorman failed in that respect. What has been said disposes, also, of the question of contributory negligence, raised by appellant.

While, ordinarily, it would have been prejudicial error to admit evidence, as was here done, with reference to his wife having had healthy children by him, yet, a question, such as was here raised, regarding plaintiff's health having been raised by defendant, we do not regard the subject as irrelevant and incompetent.

The defendant's offered instructions, which were re-

fused, were covered by instructions given, so far as legally sound.

As to the amount of the damages, we are not prepared, upon the evidence in this record, to set up our judgment against that of the jury and the trial judge, who saw the plaintiff, and say that the amount is excessive.

Other contentions, of lesser consequence, have been presented, which we have carefully considered, but we find no reason for disturbing the judgment of the trial court. The judgment will be affirmed.

*Affirmed.*

MR. JUSTICE MACK took no part in the consideration of this case.